FERNANDO SUBIA v. THE STATE.

No. 3070.   Decided April 1, 1914.

**1.—Murder—Punishment—Implied Malice—Death Penalty.**

The law, as it now stands, abolishes the distinction heretofore existing dividing murder into two degrees, and the death penalty may now be assessed for murder committed upon implied malice.

**2.—Same—Sufficiency of the Evidence—Drunkenness.**

Where, upon trial of murder, the evidence sustained the conviction of murder assessing the death penalty, and the question of drunkenness in mitigation of the punishment having been fairly submitted by the court's charge, the conviction was sustained.

Appeal from the District Court of Reeves. Tried below before the Hon. S. J. Isaacks.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*Winfield C. Smith,* for appellant.—On question of penalty not being. in accordance with law: Roberts v. State, 70 Texas Crim. Rep., 297, 156 S. W. Rep., 651; Cloud v. State, 153 S. W. Rep., 892.

On question of drunkenness: McCarty v. State, 4 Texas Crim. App., 461; Ayers v. State, 26 S. W. Rep., 396.

*C. E. Lane,* Assistant Attorney General, for the State.

HARPER, Judge.—Appellant was convicted of murder and his punishment assessed at death, from which judgment he prosecutes this appeal.

There are no bills of exception in the record, and the motion for new trial contains but one ground, it reading as follows: "Comes now the defendant, Fernando Subia, and moves the court to set aside the verdict and judgment herein rendered on the 26th day of February, 1914, for the following reasons, towit: Because, first, the judgment is contrary to the law and evidence; second, because the penalty assessed is not in accordance with law."

As to the second ground in the motion, there is now no distinction in law as to the punishment affixed to the crime of murder committed upon implied malice from murder upon express malice, where the offense is committed since July 1, 1913. The law was amended so as to abolish the distinction theretofore existing wherein murder was divided into two degrees, and the death penalty may now be assessed for murder committed upon implied malice, where the evidence, from the circumstances attendant upon the crime, authorizes the infliction of so severe a punishment. That the evidence in this case will support the verdict, we think is amply shown by the evidence. T. Y. Moorehead was marshal of the city of Pecos. On Sunday night as he came from the Christian church he was informed that some persons were misbehaving in the Mexican part of the town, and that Sheriff Harrison had sent him word to come on down there. He and Mr. Roddy went together and overtook the sheriff and Mr. Prunty and they went a part of the way together. The sheriff and Mr. Prunty were in an alley watching a house where some men had been seen going in. Two men came down the street, one apparently staggering, when Moorehead, deceased, said he would see who they were and whether or not they were drunk. As he stepped toward these two men, appellant fired, killing him. Appellant fired again, apparently at Mr. Roddy and turned and ran. The sheriff ran out of the alley, and fired at appellant as he fled, apparently shooting him in the back, the ball glancing. Several more shots were then fired by appellant, and the sheriff, when appellant escaped, but he was pursued so closely he pulled off his overcoat and dropped it. This was picked up by Roddy and when appellant was arrested the next day he was wounded in the back. The overcoat was placed on him, and the hole in the overcoat and the wound in the back were in line with each other. He was carried to Midland and while there made a confession to W. P. Brady, district attorney. The confession reads: "My name is Fernando Subia. I shot T. Y. Moorehead. I thought they were going to kill me. I was with Juan Sabinos. I thought they were going to put me in jail. I knew Moorehead when he came up to me." An examining trial was held, at which appellant testified, and on that trial he testified he killed Moorehead because Charley Gardner had told him to

do so. On this trial he testified he shot Moorehead, but claimed he was so drunk he did not know what he was doing. The evidence further shows that prior to this time appellant had been arrested at Pecos for disorderly conduct and would suggest animosity towards the officers of the law because of that fact. The question of the drunkenness of appellant in mitigation of the punishment was fairly submitted by the court to the jury.

The judgment is affirmed.

*Affirmed.*